Filed 2/28/13  P. v. Archuleta CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E054427 |
| v. | (Super.Ct.No. FWV1002489) |
| RUBEN ARCHULETA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Michael A. Sachs, Judge.  Affirmed.

Jennifer L. Peabody, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Lilia E. Garcia, Deputy Attorneys General, for Plaintiff and Respondent.

# I

## INTRODUCTION[1]

Defendant Ruben Archuleta participated in selling heroin to two undercover police officers in September and October 2010. A jury convicted him of two counts of violating Health and Safety Code section 11352, subdivision (a). The trial court found true five prior strike allegations and three prior prison term allegations. (§§ 667, subds. (b)-(i); 667.5, subd. (b), and 1170.12, subds. (a)-(d).)

Pursuant to the Three Strikes law, the trial court sentenced defendant to 25 years to life on count 1. On the other count and allegations, the court sentenced defendant to consecutive terms totaling four years four months.

On appeal, defendant argues the trial court abused its discretion by not granting defendant's *Romero*[2] motion and by refusing to order disclosure of juror information. Defendant concedes his argument about presentence custody credit was decided in *People v. Brown* (2012) 54 Cal.4th 314 and *People v. Lara* (2012) 54 Cal.4th 896 although he continues to raise the issue to preserve it for federal review. We reject defendant's other contentions and affirm the judgment.

---

[1] All statutory references are to the Penal Code unless stated otherwise.

[2] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

## II

## STATEMENT OF FACTS

On September 8, 2010, Ontario Police Officers Maynor Arana and Jorge Galvez, working undercover, bought drugs from Alfred Mandujano who offered to sell them heroin and provided them with a telephone number.

*A. Count 1*

On September 17, 2010, Arana called Mandujano and said he wanted $20 worth of "negra," slang for heroin. Mandujano said to meet him at 613 North Holmes in Ontario. Arana and Galvez dressed in plain clothes and drove an unmarked police car to the address Mandujano had given them. Mandujano was waiting outside when they arrived. Arana walked up to Mandujano and said he wanted $20 worth of heroin. Mandujano said he did not have any heroin with him but he would call a friend to deliver some to the house. Mandujano made a phone call and said his friend would be there shortly. Five to 10 minutes later, defendant arrived on a bicycle.

Arana gave Mandujano $20, which he handed to defendant, who gave Mandujano two balloons and left on his bike. The officers took the balloons back to the police department. Lab analysis determined the substances recovered weighed 0.07 grams and 0.13 grams and contained heroin.

*B. Count 2*

On October 8, 2010, Arana called Mandujano again and asked for $80 worth of heroin. Mandujano told Arana to drive to his house and he would call a friend to have him deliver the drugs. Arana and Galvez drove to the house and Galvez got out of the car with Arana. Mandujano was standing in the side yard and Arana asked for $80 worth of heroin. Mandujano said he was going to make a call and have his friend bring it to the house. Defendant arrived on a bicycle. Mandujano handed defendant the money and defendant put his hand in his mouth and spit out eight balloons, giving them to Arana. There were seven orange balloons and one red balloon. Arana gave Mandujano the red balloon at his request.

Galvaz and Arana took seven balloons back to the police station. The brown substance inside two of the balloons weighed 0.12 grams and 0.10 grams and contained heroin.

Thirty to forty-five minutes after the transaction, Officer Darryl Lauritzen arrested defendant about a half a mile from 613 North Holmes. Defendant had $80 in cash. The serial numbers on the money matched the $80 Arana used in the narcotics transaction. Lauritzen checked the box on the booking form indicating defendant appeared extremely intoxicated.

III

*ROMERO* MOTION

Defendant had five strike priors, four from a case in 1982 and a fifth from a 1990 case. In the current case, defendant was convicted of selling heroin worth $100 to

4

undercover police officers, a nonviolent, non-serious offense. After refusing to strike the prior convictions, the court sentenced defendant to 25 years to life plus a consecutive term of four years four months.

Defendant contends the trial court abused its discretion because defendant falls outside the spirit of the Three Strikes law and the court should have stricken four of defendant's strikes and sentenced him as a second strike offender. Defendant argues the current convictions were not serious or violent, were clearly a result of his lifetime addiction to drugs, and occurred when defendant was no longer on parole. Defendant also asserts his sentence constitutes cruel and unusual punishment under the circumstances of this case.[3]

A. *Standard of Review*

The Three Strikes law requires a court to "consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) In addition to the factors enumerated in *Williams*, discretion is limited by a requirement that a dismissal be in the furtherance of justice. (*Romero, supra,* 13 Cal.4th at p. 530.) The interests of

_____

[3] As discussed in the parties' supplemental briefing, defendant's two convictions for attempted murder mean he may not be eligible for resentencing under Proposition 36, or the Three Strikes Reform Act of 2012, section 1170.126.

justice require consideration of the constitutional rights of the defendant and the interests of society.  The reasons for a dismissal must be such as would motivate a reasonable judge.  (*Romero,* at pp. 530-531.)

An appellate court reviews the trial court's ruling on a *Romero* motion for an abuse of discretion.  (*People v. Carmony* (2004) 33 Cal.4th 367, 373.)  The abuse of discretion standard is "deferential," but "not empty."  (*Williams, supra,* 17 Cal.4th at p. 162.)  It asks whether the ruling in question "'falls outside the bounds of reason'" under the applicable law and the relevant facts.  (*Ibid.*; *People v. Garcia* (1999) 20 Cal.4th 490, 503.)  When the balance of the evidence favors the defendant, "'a trial court not only may *but should* exercise the powers granted to him by the Legislature and grant a dismissal in the interests of justice.'"  (*Carmony*, at p. 375.)  Only where the relevant factors manifestly support the striking of a prior conviction and no reasonable minds could differ does the failure to strike constitutes an abuse of discretion.  (*Id.* at p. 378.)

B.  *Defendant's History*

Defendant has rotated in and out of prison for 30 years.  In 1982, defendant pleaded guilty to two counts of robbery and two counts of attempted murder for a total sentence of 10 years.  Defendant was paroled in November 1988.  Two years later, in October 1990, he pleaded guilty to assault with a deadly weapon and admitted that he personally inflicted great bodily injury and was sent to prison for three years and paroled in June 1992.  In March 1995, defendant's parole was revoked and he was returned to prison to finish his term until he was discharged in November 1995.  In May 1998, defendant pleaded guilty to section 273.5 and was sentenced to eight years in prison and

6

paroled in May 2004. Defendant violated parole three times but was discharged from parole in July 2009. He committed the current offenses in September and October 2010.

*C. The Romero Motion*

Defense counsel moved to dismiss defendant's strike priors pursuant to section 1385 and *Romero.* Defense counsel argued that defendant fell outside the spirit of the Three Strikes law because of the minor nature of the current offenses; the fact that the four 1982 convictions arose out of a single case when he was 19 or 20 years old; his relatively mature age of 47, making him less likely to return to violence; his lifetime struggle with drugs; and the alternative of a lengthy sentence which would also punish defendant for his prior offenses and his current offenses. Defendant was also a caretaker for his diabetic and disabled mother, grocery shopping, paying bills, and obtaining her medication. Defendant had played baseball in his youth, attended community college, and worked at a trucking company. Defendant was enrolled in a substance abuse program from October 2009 through March 2010, shortly before the underlying crime.

The prosecutor countered that defendant should be sentenced as a third strike offender because of his criminal history and recidivism. According to the prosecution, "[M]any of Defendant's crimes are those of moral turpitude, he has shown a history of being a violent criminal who is a danger to society. This is precisely the type of recidivist criminal the Three-Strike laws is [*sic*] meant to punish."

The court noted defendant's evidence indicating that he had sought treatment for his drug abuse between October 2009 and February 2010. The court also reviewed defendant's prior convictions. In denying defendant's *Romero* motion, the court

7

observed that "in light of the nature and circumstances of his present felony and prior felony convictions and the particulars of his background, character, and prospects, that the defendant may not be deemed outside the scheme or spirit, in whole or in part." The court granted defendant's request to strike defendant's priors as to count 2 only but did not strike any of the priors related to count 1. In its decision, the court noted that the underlying crime was not serious or violent. The court noted that the only victim of the case was the State of California. While recognizing that defendant would not be eligible for parole until age 72, the court expressed concern that defendant had been imprisoned for 22 of the past 28 years. On count 1, the court sentenced defendant to 25 years to life. On count 2, defendant was sentenced to a consecutive term of four years four months for the three prison term priors found true.

*D. Analysis*

Defendant relies on several cases to argue the trial court abused its discretion. In *Williams,* the California Supreme found an abuse of discretion in dismissing strike priors because the defendant's current conviction was his fourth recent driving under the influence conviction and he had numerous prior convictions of crimes which involved actual violence. (*People v. Williams, supra,* 13 Cal.4th at p. 164.)

In contrast to *Williams*, the California Supreme Court in *Garcia*, found the trial court properly exercised its discretion in vacating the defendant's prior serious felony strikes in the interest of justice because the defendant's prior convictions all arose from a single period of aberrant behavior, he cooperated with police, his crimes were related to drug addiction, and his criminal history did not include any actual violence.

8

Cumulatively, these circumstances indicated the defendant could be deemed outside the spirit of the Three Strikes law, at least "in part." (*People v. Garcia, supra*, 20 Cal.4th at p. 503.)

In *People v. Bishop* (1997) 56 Cal.App.4th 1245, the Court of Appeal found that when a present crime is minor and the past offenses are remote "it presents the trial court with an opportunity to evaluate factors such as how long the state maintains an interest in keeping the defendant as a public charge and after what period of incarceration he is no longer likely to offend again." (*Id.* at pp. 1250-1251.)

Finally, in *People v. Strong* (2001) 87 Cal.App.4th 328, the trial court cited the defendant's advanced age and the fact that the violent felony conduct was out of character for the defendant as reasons for striking the strike. (*Id.* at p. 334.) The Court of Appeal found that the trial court had abused its discretion for a defendant with a three-year-old prior violent conviction and the defendant appropriately came within the Three Strikes regime, causing his sentence to be doubled as a second strike. (*Id.* at pp. 341, 343, 347.)

In this case, we acknowledge that the sale of $100 worth of heroin to undercover officers is a nonviolent, non-serious, victimless crime and, with his current sentence of 29 years to life, defendant may be at least 70 years old before he is eligible for parole. Even if the trial court had granted defendant's *Romero* motion and sentenced him as a second striker, he would still be facing a potential sentence of more than 15 years. Additionally, the record shows a history of heroin addiction and that defendant was likely selling heroin to support himself and his mother.

9

Nevertheless we cannot conclude the relevant factors manifestly support striking defendant's strike priors and sentencing him as a second strike offender.  (*People v. Carmony, supra*, 33 Cal.4th at p. 378.)  The remoteness of defendant's 1982 offenses is offset by defendant leading a continuous life of crime for almost 30 years.  (*People v. Humphrey* (1997) 58 Cal.App.4th 809, 813.)  Because defendant is a career criminal, his age should not constitute a mitigating factor.  Nor is defendant's sentence of 29 years to life a violation of the Eighth Amendment against cruel and unusual punishment or the Fourteenth Amendment.  (*Ewing v. California* (2003) 538 U.S. 11; *Lockyear v. Andrade* (2003) 538 U.S. 63.)

Based on defendant's recidivism and likely future conduct, the trial court did not abuse its discretion in denying defendant's *Romero* motion as to count 1  The trial court's decision was not so irrational or arbitrary that no reasonable judge could agree with it.  (*Romero, supra,* 13 Cal.4th at p. 530; *People v. Carmony, supra,* 33 Cal.4th at p. 377.)

IV

DISCLOSURE OF JUROR INFORMATION

Defendant contends that because potential juror misconduct or witness tampering occurred, additional investigation was necessary and the trial court's refusal to find that defendant established good cause for disclosure of juror information violated his rights to a fair trial and impartial jury under the federal and state Constitutions.

A.  *Relevant Background*

After the verdict, the jury foreperson revealed that, during the trial, she saw the investigating officer, Detective Jimenez, seated next to the prosecutor at counsel table,

coaching the testifying witness, Corporal Arana by mouthing the word "no." Defense counsel sought the foreperson's information to get more details as to what the juror had observed. The court requested a transcript of Arana's testimony for review.

The court reviewed the defense motion to unseal the information (Code Civ. Proc., § 237), the prosecution's opposition, and the transcript of Arana's testimony, highlighting each question to which Arana responded "no." Defense counsel argued that, because the case against defendant was based on the credibility of the various Ontario police officers involved in the controlled buy, the veracity of the witnesses was the cornerstone of the case against defendant. Defense counsel argued further that juror misconduct had occurred when the foreperson failed to come forward to report the conduct between the police officers during Arana's testimony. If the foreperson had told the court about her observations, defense counsel could have made a motion for a mistrial and the issue could have been addressed when all the parties were still available. The prosecutor argued there was no juror misconduct as the foreperson was under no obligation to disclose what she had observed.

The court commented that the jurors had been instructed to interpret any behavior by a witness and factor it into their analysis of credibility. (CALCRIM Nos. 105 and 226.) The court asked whether it was accurate that the foreperson had indicated she saw the communication, considered it, and it did not change her mind. The prosecutor confirmed that was her recollection of the juror's statements and defense counsel could not remember. The court also observed that defense counsel had argued in closing that the testifying officers were not credible. Thus, in finding defendant guilty, the jury must

11

have found the officers to be credible and the jury had been polled without expressing any reservations. The court found that release of the juror information was not warranted and further inquiry amounted to a "fishing expedition" which did not outweigh the strong public interest in juror privacy. The court reviewed the transcript of Arana's testimony and determined that every time he answered "no" it was not to a question that would have had any significant effect on the outcome of the case. The court also denied defendant's subsequent motion for new trial.

*B.  Application of Applicable Law*

To investigate the fairness and impartiality of a jury, after a verdict, disclosure of juror information is governed by sections 206 and 237 of the Code of Civil Procedure. Subdivision (g) of Code of Civil Procedure section 206 permits a defendant or his attorney to petition the court for access to juror information "for the purpose of developing a motion for new trial or any other lawful purpose." (*People v. Granish* (1996) 41 Cal.App.4th 1117, 1125.)

Pursuant to Code of Civil Procedure section 237, subdivision (a)(1), the names of jurors are to be made available to the public, unless the court determines that a "compelling interest" requires the information be kept confidential. (*People v Jefflo* (1998) 63 Cal.App.4th 1314, 1320.) Pursuant to subdivision (b) of Code of Civil Procedure section 237, a hearing on a request for juror information, such as addresses and telephone numbers, shall be held pursuant to the procedures set forth in subdivisions (c) and (d) of section 237 if the requesting party makes a prima facie showing of good cause for disclosure and the record does not establish a "compelling interest" against disclosure.

12

(*Jefflo,* at p. 1320; *People v. Granish, supra*, 41 Cal.App.4th at p. 1125.) A defendant in a criminal case is entitled to jurors' addresses and telephone numbers "if the defendant sets forth a sufficient showing to support a reasonable belief that jury misconduct occurred, that diligent efforts were made to contact the jurors through other means, and that further investigation is necessary to provide the court with adequate information to rule on a motion for new trial." (*People v. Rhodes* (1989) 212 Cal.App.3d 541, 551-552.)

If the court does not order a hearing, the court is required to state, in a minute order, its reasons for not ordering a hearing and to make express findings either of the lack of a prima facie showing of good cause or the existence of a compelling reason against disclosure. (Code Civ. Proc., § 237, subd. (b).) These statutory provisions require the court to balance the jurors' interest in privacy against the "'strong public interest in the ascertainment of the truth in judicial proceedings.'" (*People v. Rhodes, supra,* 212 Cal.App.3d at p. 549; *People v. Jefflo, supra*, 63 Cal.App.4th at p. 1321, fn. 8; *People v. Carrasco* (2008) 163 Cal.App.4th 978, 990; *People v. Granish, supra*, 41 Cal.App.4th at p. 1126, *People v. Rhodes, supra,* 212 Cal.App.3d at pp. 549-550.) Denial of a petition filed pursuant to Code of Civil Procedure section 237 is reviewed under the abuse of discretion standard. (*People v. Jones* (1998) 17 Cal.4th 279, 317.)

Defendant contends he deserved to have a hearing to establish what exactly the foreperson saw and how she incorporated her observations into the jury's deliberations. In failing to find good cause and holding a hearing to investigate, thereby denying defendant's request for the juror information on the prejudicial impact of a claim of juror misconduct that was not yet ripe, the court abused its discretion.

13

Here, however, the trial court acted within its discretion when it denied the defense motion to disclose the jurors' information because the trial court made an express finding of the lack of a prima facie showing of good cause. The trial court determined that the foreman did not share her observations with the other jurors and there was no indication whatsoever that it affected her decision or the verdict. Furthermore, additional investigation would have constituted a "fishing expedition" invading juror privacy. Under these circumstances, the trial court did not abuse its discretion in denying the defense motion for disclosure.

V

DISPOSITION

The trial court did not abuse its discretion in denying the defense motion for disclosure of juror information or in denying defendant's *Romero* motion. We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>CODRINGTON</u>
J.

We concur:

<u>HOLLENHORST</u>
Acting P. J.

<u>McKINSTER</u>
J.

14