Filed 3/4/16  P. v. Perez CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>EVER MAURICO PEREZ,<br><br>    Defendant and Appellant. | B255893<br><br>(Los Angeles County<br> Super. Ct. No. BA408836) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lisa B. Lench, Judge.  Affirmed.

Paul Stubb, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell and Tasha G. Timbadia, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted appellant Ever Maurico Perez of the charged offense of shooting at an inhabited dwelling (count 2; Pen. Code, § 246),[1] and found true the allegation that he personally used a firearm (§ 2022.5, subd. (a)). It also convicted him of lesser included offenses in three other counts: attempted criminal threats (count 1; §§ 664/422), a lesser included of criminal threats (§ 422); assault with a firearm (count 3; § 245, subd. (a)(2)), a lesser included of assault with a semiautomatic firearm (§ 245, subd. (b)), finding true the allegation that appellant personally used a firearm (§ 12022.5, subd. (a)); and attempted corporal injury to a spouse (count 4; §§ 664/273.5), a lesser included of corporal injury to a spouse (§ 273.5, subd. (a)), finding true the allegation that defendant personally inflicted great bodily injury on the victim (§ 12022.7, subd. (e)). The trial court sentenced appellant to a total term of 13 years and 2 months.

In this appeal from the judgment of conviction, appellant contends that: (1) the trial court erred in denying his petition for juror information, and (2) in denying his new trial motion, the court applied the wrong standard of review, thus requiring that we remand the case for the trial court to apply the proper standard. We find no error and therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant and Esperanza Perez[2] were husband and wife. Appellant's convictions arose from two violent incidents against her, the first occurring on March 23-24, 2012, and the second nearly a year later on March 8, 2013.

---

[1] All unspecified statutory references are to the Penal Code.

[2] Because two prosecution witnesses, Esperanza Perez and Jennifer Perez, share the same last name, we will refer to them by their first names.

*March 23-24, 2012 Incident (*Count 4*)*

On March 23, 2012, around 11:30 p.m., appellant called Esperanza and told her he had been using drugs and wanted to come home. Esperanza picked him up. Because she was angry, she decided to go to her mother's house. She waited for appellant to get in the shower, and then ran out of her apartment to the back patio, where her car was parked.

At trial, she testified that she injured herself when she tripped and fell while running. She was impeached with her preliminary hearing testimony, in which she stated that she ran from the apartment because appellant was being aggressive. As she ran, appellant caught up to her and punched her in the back of her head, causing her to fall and injure her mouth. She gave the same version of events in her 911 call, and later in speaking with a detective.

Esperanza's neighbor, Jennifer, heard screaming and crying in the parking lot. Her boyfriend went outside and brought Esperanza to Jennifer's apartment, where Esperanza spent the night. Esperanza was crying, bleeding from "a busted lip," and had "a bump on her head."

The next morning, Esperanza left Jennifer's apartment. Shortly afterward, Jennifer heard Esperanza running and screaming down the hall. Jennifer looked through the peephole of her door and saw appellant "knocking and kicking and yelling." Esperanza was on the floor, and appellant formed a fist and lunged toward her as if he were going to punch her. Jennifer called 911, and later observed that Esperanza was bleeding again from her lip, and that a front tooth was pushed in.

3

A few days after the incident, Esperanza allowed appellant to move back into her apartment. A week after the incident, Esperanza told a detective that she had lied and that appellant had never hit her.

Photographs taken several days after the incident showed bruising on Esperanza's upper lip. Approximately a month and a half after the incident, Esperanza began experiencing tooth pain and subsequently had three root canal procedures.

*March 8, 2013 Incident* (*Counts 1-3*)

On March 8, 2013, Esperanza was driving home from work in her car when she saw her truck, which appellant had taken the night before to use drugs, parked on the side of the road a few blocks from her workplace. Esperanza parked her car and told appellant to return the truck or she would report it stolen. Appellant replied, "Do you want me to beat you?" Esperanza returned to her car and drove home.

When she arrived at her apartment, she locked the door, closed the blinds, and put a chair behind the door to give her time to call the police in case appellant tried to kick the door down. About 20 minutes later, appellant rang the doorbell, and began knocking on the door and yelling at Esperanza to open it. Esperanza called 911.

At trial, she denied that she heard a gunshot, and stated instead that she heard something hit the heater near the entrance of her apartment. She was impeached with her preliminary hearing testimony, in which she stated that she heard a gunshot and fell to the floor for protection.

She also was impeached with her statements to responding officers, whom she told that appellant pounded on her door and threatened to beat her if she

4

refused to open it. She looked through the peephole, saw a gun, heard a gunshot, and dropped to the floor. Officers found a shell casing in the hallway outside the apartment, a bullet fragment inside the apartment, and a bullet hole in the door near the handle.

## DISCUSSION

I.      *Disclosure of Juror Information*

Appellant contends the trial court abused its discretion in denying his request to disclose juror information. We disagree.

*Background*

After the verdict, the trial court sent each juror a form letter expressing its appreciation and inviting comments about the experience. In response, one juror wrote a letter stating, in pertinent part: "You might be interested to know that it was the jury's interpretation of your final instructions that won the day as far as the verdict. We the jury were in complete agreement that the prosecution never proved its case. We also agreed that in all probability [appellant] was guilty based on the evidence that something had indeed happened: [Esperanza] had been roughed up and a gun shot was fired into the door of her apartment. It was our opinion that it was highly likely that [appellant] was the culprit. Many of the jurors felt that [Esperanza] was just as guilty as her husband. We were all of the opinion that if [appellant] was given jail time that [Esperanza] would come to visit him with displays of great love and cookies. We were all of the opinion that neither this trial nor any 'punishments' would have any effect on the continued domestic bliss of the Perez union. [¶] So thank you for the opportunity to be greatful [*sic*] that I am not [appellant] nor married to [Esperanza]."

5

After the court shared the letter with the parties, appellant's trial counsel filed a petition for disclosure of juror information to develop a motion for new trial. She contended that the letter "demonstrates a lack of an abiding conviction of the truth of the charges and shows that the verdict rendered is inconsistent with [the jurors'] belief." The trial court denied the petition. The court noted that the relevant part of the letter "starts with the fact that it was the jury's interpretation of the final instructions that won the day. [T]he instructions made it very clear as to what the standard of proof was. [¶] . . . [T]hey had some questions and then they read the instructions and they followed the instructions. Or they had some concerns, they read the instructions, they followed the instructions. [¶] I will also add that the jury was polled at the end of the case, and each juror affirmatively stated that it was his or her individual verdict. The instructions clearly delineate what the standard of proof is for a conviction to be returned. The lawyers made it very clear what the standard of proof was for the conviction to be returned. And I believe that the letter . . . contains a lot of statements, but I think that ultimately it recognizes that the instructions were followed."

*Applicable Law*

"After a jury's verdict is recorded in a criminal jury proceeding, the court's record is 'sealed,' meaning all 'personal juror identifying information of trial jurors . . . consisting of names, addresses, and telephone numbers' is extracted or otherwise removed from the court record. (Code Civ. Proc., § 237, subds. (a)(2)–(3).) Pursuant to Code of Civil Procedure section 206, subdivision (g), 'a defendant or defendant's counsel may . . . petition the court for access to personal juror identifying information within the court's records necessary for the defendant to communicate with jurors for the purpose of developing a motion for new trial or

6

any other lawful purpose.'" (*People v. Carrasco* (2008) 163 Cal.App.4th 978, 989.) "Code of Civil Procedure section 237, subdivision (b) provides that '[t]he petition shall be supported by a declaration that includes facts sufficient to establish good cause for the release of the juror's personal identifying information.' Absent a showing of good cause for the release of the information, the public interest in the integrity of the jury system and the jurors' right to privacy outweighs the defendant's interest in disclosure. [Citations.]" (*People v. McNally* (2015) 236 Cal.App.4th 1419, 1430.) "The statutory provisions clearly indicate an intent to restrict the defendant from receiving juror personal information unless necessary." (*People v. Granish* (1996) 41 Cal.App.4th 1117, 1128.)

"Good cause, in the context of a petition for disclosure to support a motion for a new trial based on juror misconduct, requires 'a sufficient showing to support a reasonable belief that jury misconduct occurred . . . .' [Citations.] Good cause does not exist where the allegations of jury misconduct are speculative, conclusory, vague, or unsupported. [Citation.] We review the denial of a petition for disclosure for an abuse of discretion. [Citations.]" (*People v. Cook* (2015) 236 Cal.App.4th 341, 345-346.)

As in the trial court, appellant contends on appeal that the juror's letter established that at least one juror believed the prosecution did not prove his guilt beyond a reasonable doubt. We are not persuaded. Reasonably construed, the juror's letter informed the court that "the jury's interpretation of [the] final instructions . . . won the day as far as the verdict" was concerned. The jury was "in complete agreement that the prosecution never proved its case," and also had various thoughts about the evidence (i.e., that "in all probability [appellant] was guilty," "[Esperanza] had been roughed up and a gun shot was fired into the door of her apartment," and "[m]any of the jurors felt that [Esperanza] was just as guilty

7

as her husband." But the jury's interpretation of the court's instructions ultimately led to the verdict. The letter did not purport to state that the any juror voted to convict based on proof less than proof beyond a reasonable doubt. Moreover, as the trial court reasoned, the instructions and argument of counsel made clear that the standard of proof was proof beyond a reasonable doubt, and when polled, each juror indicated that the verdicts were his or her own personal verdicts.

Appellant relies on *Bell v. Bayerische Motoren Werke Aktiengesellschaft* (2010) 181 Cal.App.4th 1108, 1127, which found that "[a]n express agreement not to follow the instructions 'or extensive discussion evidencing an implied agreement to that effect' would constitute juror misconduct. [Citation.]" But here, there was no evidence of either an express or implied agreement not to follow the court's instructions. To the contrary, the letter states that the court's instructions "won the day as far as the verdict" was concerned.

In short, the trial court did not abuse its discretion in denying appellant's petition.

II.    *Denial of New Trial Motion*

Appellant filed a motion for new trial based on the purportedly inconsistent verdict on count 4, relating to the March 23-24, 2012 incident, and the insufficiency of the evidence to support it. Appellant contends that in denying the motion, the trial court applied the wrong standard in reviewing the evidence, thus requiring that the case be remanded for application of the proper standard. We disagree.

8

*Background*

In count 4, defendant was charged with corporal injury on a spouse (§ 273.5, subd. (a)). The jury was instructed, in part, that to convict on that charge, it had to find that appellant "willfully inflicted a physical injury on his spouse" and that "[t]he injury . . . resulted in a traumatic condition," that is, "a wound or other bodily injury, whether minor or serious, caused by the direct application of physical force." The jury was also instructed on attempted corporal injury on a spouse as a lesser included offense (§§ 664/273.5, subd. (a)). As to that offense, the jury was informed that to find appellant guilty of an attempt, it must conclude that he "took a direct but ineffective step toward committing . . . Corporal Injury on a Spouse," and that he "intended to commit . . . Corporal Injury on a Spouse."

It was further alleged in count 4, that appellant personally inflicted great bodily injury on the victim (§ 12022.7, subd. (e)). The jury was instructed that if it convicted appellant of corporal injury to a spouse or an attempt to commit that crime, it would also have to decide whether the prosecution had proved "that the defendant personally inflicted great bodily injury on Esperanza Perez," meaning "significant or substantial physical injury . . . greater than minor or moderate harm."

At trial, the evidence was inconsistent as to how Esperanza received the injuries in the March 23-24, 2012 incident to her head, lips, and teeth, the latter requiring three root canal procedures. At trial, she testified that she suffered the injuries when on March 23, she ran from the house, tripped, and fell. She stated that appellant did not chase her and did not strike her. On the other hand, she had given a different version to the police and at the preliminary hearing, namely, that appellant chased her and struck her in the head, causing her to fall and injure herself. At trial, she also denied that appellant assaulted her when she left

9

Jennifer's apartment on March 24. However, Jennifer testified that through the peep hole she saw appellant appear to punch Esperanza, and that afterward Esperanza was bleeding from her lip and a front tooth was pushed in.

In his new trial motion, appellant argued that the verdict was inconsistent and contrary to the evidence, because only two possible scenarios existed. In one scenario, based on Esperanza's preliminary hearing testimony, certain pretrial statements to the police, and Jennifer's testimony, appellant punched Esperanza in the back of the head, causing her to fall and injure her mouth, and later inflicted further injury after she left Jennifer's apartment. In that scenario, defendant committed the crime of corporal injury to a spouse and personally inflicted great bodily injury on her.

The other scenario, based on Esperanza's recanting testimony and certain other pretrial statements, was that Esperanza injured her mouth when she tripped and fell, and that no further assault occurred later. In that scenario, appellant did not commit the crime of corporal injury to a spouse, or attempt to commit that crime, and did not personally inflict great bodily injury on Esperanza. Therefore, appellant argued, the verdict on count 4 – guilty of attempted corporal injury on a spouse, with a true finding on the bodily injury allegation – was fatally inconsistent and not supported by the evidence.

The trial court denied the new trial motion. It noted that the evidence as to what occurred "varied," and the court had considered whether "there is a scenario . . . which justified an attempt on count 4 and still a finding of great bodily injury, with an understanding that the jury's verdict is to be respected even if it is seemingly inconsistent." The court concluded that "based upon some of the evidence that was presented, that they could find that he attempted to inflict injury . . . and that ultimately great bodily injury was the result. So while I say there was

10

some inconsistency, I don't think it's sufficient to find that it was a legally inconsistent verdict."

*Analysis*

The trial court's reasoning was sound. "Inconsistent verdicts alone do not establish insufficient evidence. 'An acquittal of one or more counts shall not be deemed an acquittal of any other count.' [Citations.] [¶] 'The law generally accepts inconsistent verdicts as an occasionally inevitable, if not entirely satisfying, consequence of a criminal justice system that gives defendants the benefit of a reasonable doubt as to guilt, and juries the power to acquit whatever the evidence.' [Citation.] '[I]f an acquittal of one count is factually irreconcilable with a conviction on another, or if a not true finding of an enhancement allegation is inconsistent with a conviction of the substantive offense, effect is given to both. [Citations.]' [Citation.] 'The jury may have been convinced of guilt but arrived at an inconsistent acquittal or not true finding "through mistake, compromise, or lenity . . . ." [Citation.]' [Citation.]" (*People v. Hussain* (2014) 231 Cal.App.4th 261, 273.)

Under these principles, regardless of the inconsistency in the verdict on count 4, the trial court was correct in concluding that the inconsistency itself was not sufficient to set the verdict aside. To the extent the court considered whether the verdict was contrary to the evidence, nothing suggests that the court applied an incorrect standard.

"'In reviewing a motion for a new trial, the trial court must weigh the evidence independently. [Citation.] It is, however, guided by a presumption in favor of the correctness of the verdict and proceedings supporting it. [Citation.] The trial court "should [not] disregard the verdict . . . but instead . . . should

11

consider the proper weight to be accorded to the evidence and then decide whether or not, in its opinion, there is sufficient credible evidence to support the verdict." [Citation.] [¶] A trial court has broad discretion in ruling on a motion for a new trial, and there is a strong presumption that it properly exercised that discretion." (*People v. Fuiava* (2012) 53 Cal.4th 622, 729-730.)

Here, the record fails to show that the trial court applied the wrong standard in reviewing the evidence. (See *People v. Sullivan*(2007) 151 Cal.App.4th 524, 549 [trial court is presumed to apply proper standard of review; error must be affirmatively shown].) As the court concluded, the evidence "varied" as to what occurred in the March 23-24 incident. In light of that varied evidence, the jury reached a facially inconsistent verdict on count 4. But whether by mistake, compromise, or lenity, there was, as the court observed, no legal inconsistency justifying setting the verdict aside. We find no basis on which to conclude that the court applied the wrong standard of review or abused its discretion in denying the new trial motion.

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.


We concur:


EPSTEIN, P. J.


COLLINS, J.

13