[No. D057741. Fourth Dist., Div. One. Sept. 8, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
MARK DAVIS JULIAN, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION[1]]**

[1] Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of Discussion parts I, II, IV, V and VI.

## COUNSEL

Linda Acaldo, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Steve Oetting and Barry Carlton, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BENKE, Acting P. J.**—A jury convicted defendant Mark Davis Julian of two counts of vehicular manslaughter while intoxicated without gross negligence (counts 1 and 2; Pen. Code,[2] § 191.5, subd. (b)). The jury also found Julian inflicted great bodily injury under section 12022.7, subdivisions (a) and (b) as to both manslaughter counts. With respect to count 1, the vehicular manslaughter of Terri Keller (Terri), the jury found Julian guilty of inflicting great bodily injury causing the coma of Terri's daughter, Amanda Keller (Amanda). (§ 12022.7, subd. (b).) Also on count 1, the jury found Julian inflicted great bodily injury within the meaning of section 12022.7, subdivision (a) on Terri's other daughter, Alexis Keller (Alexis). (§ 12022.7, subd. (a).) With respect to count 2, the vehicular manslaughter of Amanda, the jury found Julian inflicted great bodily injuries on Terri and Alexis within the meaning of section 12022.7, subdivision (a).

The court sentenced Julian to 12 years of imprisonment. The sentence was composed of a four-year upper term year for the manslaughter of Terri, a five-year enhancement for Amanda's great bodily injury resulting in a coma and a three-year enhancement for Alexis's great bodily injury. With respect to the manslaughter of Amanda, a four-year upper term and 2 three-year great bodily injury enhancements for the injuries to Terri and Alexis were imposed and stayed under section 654.

Julian appeals, contending the trial court erred (1) in rejecting his offer of proof with respect to a power outage at the site of the accident; (2) in admitting into evidence an "in-life" photograph of the Keller family; (3) in

---

[2] All further statutory references are to the Penal Code unless otherwise indicated.

imposing section 12022.7, subdivisions (a) and (b) enhancements for man-slaughter victims Terri and Amanda; (4) in imposing two section 12022.7, subdivision (a) enhancements for the great bodily injury suffered by Alexis; (5) in imposing the maximum restitution fine of $10,000 without considering his ability to pay; and (6) in failing to give him four days of presentence credits.

We find no error and affirm.

## FACTUAL BACKGROUND

On the afternoon of May 13, 2008, after drinking several 32-ounce beers, Julian was traveling eastbound on Highway 74 in Riverside County, approaching Briggs Road. Terri, who was driving a sports utility vehicle (SUV), was stopped on northbound Briggs Road at Highway 74 and waiting for the signal to change. Although traffic on eastbound Highway 74 was stopped at Briggs Road, Julian drove his pickup truck at between 45 and 59 miles per hour past the stopped traffic and through a red light at Briggs Road. Julian's truck collided with Terri's SUV, which had entered the intersection. Terri suffered an "internal decapitation" and died on impact.

Terri's two daughters, Amanda and Alexis, were passengers in the SUV. After being hit by Julian's truck, Terri's SUV spun around, hit two vehicles in westbound lanes of Highway 74 and came to a stop. At the opposite traffic light, off-duty Police Officer Joseph Nardone was in his personal vehicle. Nardone saw a body fly out of the rear window of the SUV and into oncoming traffic. The body Nardone saw was Alexis, who lost consciousness. When she awoke, Alexis found herself lying facedown on the pavement next to another vehicle's tire; blood and glass were everywhere around her.

Nardone moved Alexis to safety. Enroute to a local hospital, Alexis went in and out of consciousness. Alexis suffered a ruptured spleen, a laceration on the back of her head and a broken back. Alexis was hospitalized for four days. Upon her release she was placed in a back brace, which she wore for six months; she was confined to bed for the remainder of the summer.

After attending to Alexis, Nardone found Amanda partially ejected from the SUV with her head outside of the car and her feet held inside the vehicle by a seatbelt. Amanda was unconscious, bleeding from both ears and her nose and mouth and was having extreme difficulty breathing. Upon removing Amanda from the SUV, Nardone realized she had ceased breathing. Nardone successfully administered cardiopulmonary resuscitation and Amanda was flown by helicopter to a local hospital. However, Amanda never regained consciousness.

Seven months later, in December 2008, a doctor determined Amanda was in a permanent vegetative state and would never regain complete consciousness. In January 2009, after discussing Amanda's condition with her physician, Amanda's father permitted the physician to withdraw Amanda's life support and she died.

Two hours after the accident Julian had a recorded blood-alcohol level of 0.10 percent. An expert testified that given the rate at which Julian likely metabolized the alcohol in his bloodstream, at the time of the accident Julian probably had a blood-alcohol level of 0.14 percent. Julian was not seriously injured in the collision.

## TRIAL COURT PROCEEDINGS

As we indicated at the outset, a jury convicted Julian of two counts of vehicular manslaughter while intoxicated without gross negligence and found true the alleged great bodily injury enhancements. (Counts 1 and 2; §§ 191.5, subd. (b), 12022.7, subds. (a), (b).) As we also indicated, the trial court sentenced Julian to a total of 12 years' imprisonment including four years for the manslaughter of Terri, five years on the enhancement for Amanda's great bodily injury resulting in a coma and three years on the enhancement for Alexis's great bodily injury. Sentence for Amanda's manslaughter, including enhancements for the bodily injuries Terri and Alexis suffered, was imposed and stayed under section 654.

## DISCUSSION

### I, II[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III

*Section 12022.7, Subdivision (g)*

1. *Background*

Relying on section 12022.7, subdivision (g), Julian argues the enhancements imposed for the injuries Terri and Amanda suffered were improper. We find no error.

---

[*]See footnote, *ante*, page 1524.

2. *Legal Principles*

Section 12022.7, subdivision (g) states: "This section shall not apply to murder or manslaughter or a violation of Section 451 or 452. Subdivisions (a), (b), (c), and (d) shall not apply if infliction of great bodily injury is an element of the offense." In *People v. Verlinde* (2002) 100 Cal.App.4th 1146, 1168 [123 Cal.Rptr.2d 322] (*Verlinde*), we interpreted section 12022.7, subdivision (g) in a context related to the one presented here.

■ In *Verlinde* the defendant was convicted of the manslaughter of one of the passengers in her vehicle, as well as other offenses. With respect to all her convictions, the jury found the defendant inflicted great bodily injuries within the meaning of section 12022.7, subdivision (a) on two surviving passengers. Relying on section 12022.7, subdivision (g), the defendant argued that because she was convicted of manslaughter, enhancements under section 12022.7 were not authorized. In rejecting this argument, we stated: "Section 12022.7 does not define a separate offense, but rather is a legislative attempt to punish more severely those crimes that result in great bodily injury 'on any person.' [Citations.] The language of section 12022.7, subdivision (g) does not limit application of the statute to this vehicular manslaughter case where, in addition to the homicide victim, two other victims suffered great bodily injury. The statutory exemption for murder and manslaughter *is intended to bar imposition of an enhancement for the injuries inflicted on the homicide victim*, who obviously has suffered great bodily injury. Thus, the statutory exemption prevents prohibited dual punishment for the same crime. [Citation.] 'When a defendant engages in violent conduct that injures several persons, he may be separately punished for injuring each of those persons, notwithstanding section 654. [Citation.]' [Citation.] Verlinde's argument is inconsistent with a fundamental objective of our penal justice system, namely, 'that one's culpability and punishment should be commensurate with the gravity of both the criminal act undertaken and the resulting injuries.' [Citation.]" (*Verlinde, supra,* 100 Cal.App.4th at p. 1168, italics added.)

■ In *People v. Weaver* (2007) 149 Cal.App.4th 1301, 1330–1331 [58 Cal.Rptr.3d 18] (*Weaver*), another manslaughter case, we followed *Verlinde* and held a great bodily injury enhancement could be imposed for injuries suffered by the survivor of the collision the defendant caused. "[Appellant] does not persuade us that section 12022.7, subdivision (a) is inapplicable in a case involving only a 'victim-specific' murder or manslaughter offense where a person other than the deceased victim sustains great bodily injury. First, and most importantly, we note the express language of section 12022.7, subdivision (a) does *not* limit its application to a specific *victim* of a felony offense. Rather, it applies to great bodily injuries sustained by 'any *person* other than an accomplice.' [Citation.] Second, its express language also

applies when the defendant personally inflicts great bodily injury on any person '*in the commission* of a felony.' [Citation.] That language is sufficiently broad to include persons other than the victim of a victim-specific felony offense who sustain great bodily injury during the defendant's commission of that offense. Had the Legislature intended to limit section 12022.7, subdivision (a)'s application to only the ostensible victim injured in the commission of a felony offense, it could have expressly so provided. [Citations.] Furthermore, we note it is generally appropriate that a defendant be subject to greater punishment for committing an offense if his or her commission of that offense causes injuries to multiple persons. [Citations.] It is consistent with our criminal justice system to impose greater punishment on Weaver for the great bodily injuries she personally inflicted on [the injured survivor] during her commission of the section 191.5, subdivision (a) offense that caused [the manslaughter victim's] death." (*Ibid.*)

The holdings and reasoning we adopted in both *Verlinde* and *Weaver* require us to reject Julian's contention. Although Terri and Amanda died as a result of their injuries and their deaths support Julian's manslaughter convictions, in this case their injuries also support enhancements under section 12022.7.

■ As we did in *Verlinde* and *Weaver*, we narrowly construe the exception set forth in section 12022.7, subdivision (g). Under section 12022.7, subdivision (g), when a defendant is convicted of murder or manslaughter, that conviction may not be enhanced with the injury the victim of the murder or manslaughter necessarily suffered. However, injuries caused to *other* victims of the defendant's conduct may serve as enhancements under section 12022.7. (*Verlinde, supra,* 100 Cal.App.4th at p. 1168; *Weaver, supra,* 149 Cal.App.4th at pp. 1330–1331.)

Thus, Julian's conviction for the death of Terri cannot be enhanced with punishment for the grievous injury Terri herself suffered. However, under *Verlinde* and *Weaver* it is clear the conviction for Terri's death can be enhanced for the serious injuries the surviving occupant of the SUV, Alexis, suffered. Alexis's injuries are, for purposes of applying section 12022.7, subdivision (g), indistinguishable from the injuries suffered by the surviving victims in *Verlinde* and *Weaver*. Like the injuries the survivors in those cases suffered, Alexis's injuries were caused by the same conduct which caused Terri's death and, as in *Verlinde* and *Weaver*, those injuries to a survivor will support enhancement of Julian's underlying manslaughter conviction.

■ This brings us then to the injuries Amanda suffered. The fact Amanda died from her injuries cannot, by itself, prevent those injuries from being used as an enhancement to Julian's punishment for Terri's death. Amanda's

injuries were just as distinct from Terri's injuries as Alexis's injuries and under *Verlinde* and *Weaver* their separate and distinct nature permits the injuries to be used as an enhancement. (See *Verlinde, supra,* 100 Cal.App.4th at p. 1168; *Weaver, supra,* 149 Cal.App.4th at pp. 1330–1331.) To hold Alexis's injuries will support an enhancement but, because she died, Amanda's injuries will not, would permit a defendant, such as Julian, to benefit to some extent from the fact one of his multiple victims died rather than survived. We of course must reject such a grotesque interpretation of the statute. As we stated in *Verlinde,* "a fundamental principle of statutory construction is that the language of a statute should not be given a literal meaning if doing so would result in absurd consequences." (*Verlinde, supra,* 100 Cal.App.4th at pp. 1168–1169.)

Moreover, the fact Amanda's fatal injuries led to a second distinct manslaughter conviction did not prevent the trial court from imposing a section 12022.7, subdivision (b) enhancement to Terri's manslaughter based on Amanda's injuries. Under section 654 Julian could not and was not punished twice for the fatal injuries Amanda suffered. (See *People v. Reeves* (2001) 91 Cal.App.4th 14, 56 [109 Cal.Rptr.2d 728]; *People v. Arndt* (1999) 76 Cal.App.4th 387, 395 [90 Cal.Rptr.2d 415].) As we have noted, although Amanda's fatal injuries were the basis for both the five-year enhancement imposed for Terri's death and the four-year upper term imposed for the second manslaughter conviction, the trial court properly stayed execution of the second manslaughter sentence under section 654. Thus, a broader interpretation of section 12022.7, subdivision (g) is not necessary to avoid dual punishment.

On the other hand the narrower interpretation of section 12022.7, subdivision (g) which we adopted in *Verlinde* and *Weaver* is necessary so that a trial court has the ability to fully comply with section 654. Under section 654, subdivision (a), where an act is punishable by different provisions of law the defendant must be punished "under the provision that provides for the longest potential term of imprisonment." Here, only under our narrow interpretation could the trial court comply with section 654 by imposing the five-year enhancement under section 12022.7, subdivision (b) for the injuries resulting in Amanda's coma and staying execution of the four-year upper term for her manslaughter.

In sum, we continue to adhere to the narrow interpretation of section 12022.7, subdivision (g) we adopted in *Verlinde* and *Weaver.* That interpretation not only avoids the absurd result of diminishing punishment when a victim dies, it also is consistent with the requirement of section 654 a defendant be sentenced under the statute which provides the longest potential term of imprisonment. Under *Verlinde* and *Weaver,* the distinct nature of

Amanda's injuries permitted those injuries to enhance the sentence for Terri's manslaughter; similarly, and subject to section 654, Terri's injuries were properly used as an enhancement for Amanda's manslaughter.

### IV–VI*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed.

McDonald, J., and Irion, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 22, 2011, S197132.

---

*See footnote, *ante*, page 1524.