Filed 12/12/13; opinion following hearing

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E054307 |
| v. | (Super.Ct.No. SWF10000834) |
| VICTORIA SAMANTHA COOK, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Dennis A. McConaghy, Judge. Affirmed in part, reversed in part.

Thomas K. Macomber, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steven T. Oetting and Tami Falkenstein Hennick, Deputy Attorneys General, for Plaintiff and Respondent.

_____

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts A and B.

1

Defendant and appellant Victoria Samantha Cook pled guilty to the misdemeanor offense of driving with a suspended license (count 4—Vehicle Code, § 14601.1, subd. (a)). Thereafter, a jury convicted defendant of three counts of gross vehicular manslaughter for the respective deaths of Zaria Williams (Williams), Christine Giambra (Giambra), and Cedric Page (Page) (counts 1-3—Pen. Code, § 192, subd. (c)(1)).[1] The jury additionally found true three allegations attached to the count 1 offense that defendant had personally inflicted great bodily injury upon Giambra, Page, and Robert Valentine (Valentine) (Pen. Code, § 12022.7, subd. (a)). The court sentenced defendant to an aggregate term of incarceration of nine years, eight months, striking punishment for the enhancements as to Giambra and Page, but imposing a three-year consecutive term for the enhancement as to Valentine.

On appeal, defendant makes four assignments of error: (1) the court erred in excluding evidence of the victims' propensity for reckless driving as a potential defense of legal necessity; (2) the People committed prejudicial prosecutorial misconduct in ostensibly alluding to the pristine driving records of the victims and witnesses; (3) the section 12022.7[2] enhancements must be reversed because the statute explicitly forbids its application to cases of manslaughter; and (4) the trial court abused its discretion by denying defendant's request for release of juror information. We reverse the true

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The jury found not true an allegation attached to count 1 that defendant had personally inflicted great bodily injury against Danyell Rivera (Rivera).

findings on the section 12022.7, subdivision (a) enhancements with respect to victims Giambra and Page. In all other respects, we affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

Austin Welch (Welch) testified that on June 2, 2009, he was driving home eastbound on Highway 74 from work. He witnessed the driver of a charcoal gray Ford Fusion, later determined to be defendant, driving erratically. Traffic slowed in the right lane, in which defendant was traveling; defendant then pulled out abruptly into the fast lane in front of a silver Audi whose driver, later identified as victim Page, was forced to slam on his brakes.

Defendant immediately sped up as Page slowed to allow space between the two cars. Defendant later changed back into the slow lane. As traffic slowed in that lane, defendant once again changed lanes back into the fast lane without signaling, cutting Page off and forcing Page to slam on his brakes and swerve to avoid hitting defendant's car. Defendant was driving "very fast" and "swerved pretty hard."

Both drivers then sped up quickly. Page came so close to the rear of defendant's vehicle that Welch could not see a gap between them. Without signaling, defendant once again changed lanes into the slow lane in front of Welch's vehicle, where there was insufficient space to fit; defendant's vehicle collided with Welch's. This caused defendant's vehicle to fishtail, dart across lanes, and eventually come to rest in a field on the side of the road.

Welch thereafter witnessed a Mitsubishi SUV launch into the air. Afterward, Welch was able to see that Page's Audi and the Mitsubishi had been involved in a head-

3

on collision. A white Nissan Altima (driven by Rivera) then rear-ended the Mitsubishi. Rivera suffered a dislocated elbow. The driver of the Mitsubishi, Valentine, was "screaming for his life" and had blood coming out of his mouth. Deputy Coroner Kathleen Cohen testified Page, Giambra, and Williams were already dead when she arrived at the scene of the accident.

CHP Officer David Kling was dispatched to investigate the collision. He interviewed a number of the drivers and witnesses to the accident. He requested help from the Multi Disciplinary Accident Investigation Team (MAIT), which consists of "specialized officers who do accident reconstruction and very specialized investigation into complex accidents." Together they gathered evidence from the scene, and surveillance video from a nearby convenience store and a bus traveling nearby at the time of the accident.

Officer Kling and MAIT Officer Scott Parent concluded defendant was the primary cause of the collision because of her unsafe lane change. They determined the sequence of events to have begun when defendant's vehicle collided with Welch's, causing defendant to swerve left, colliding with Page's vehicle and forcing it into oncoming traffic. Page's vehicle thereafter collided head-on with Valentine's. Rivera braked to avoid hitting Valentine's vehicle; however, Rivera grazed Valentine's Mitsubishi and hit Page's Audi.

The People played the video recordings from the convenience store and bus during trial. Juanita Solt (Solt), who was traveling eastbound on Highway 74 at the time of the accident, testified she saw a black Acura driving aggressively, tailgating vehicles,

4

honking its horn, swerving in and out of lanes, and eventually traveling into defendant's lane, forcing defendant into the slow lane and Page's vehicle. Officer Kling testified he had determined that Solt had not actually witnessed the accident because the video showed her coming through the scene 13 to 14 seconds after the vehicles involved, which contradicted her statement that she was right behind the vehicles involved. None of the other witnesses described seeing the black vehicle reported by Solt.[3] Officer Kling did not find any black paint transfer on any of the cars involved in the collision.

## DISCUSSION

A.     <u>RELEVANCE OF THE DRIVING RECORDS OF WELCH AND PAGE</u>

Defendant contends the court prejudicially erred in excluding admission of the driving records of Welch and Page, which undermined her defense that her movement into Welch's lane was committed under legal necessity. We disagree.

In its pretrial brief and motion in limine, the People sought admission of defendant's prior driving record to prove her appreciation of the risk she posed to others by driving recklessly. The People also sought to exclude any evidence of contributory negligence on the part of Page, evidence Page was driving with a suspended license, and Welch's previous driving record. After an off-the-record discussion, the court determined that it would allow evidence of defendant's receipt of warnings and citations issued by three different police officers.

---

[3] Defendant testified she was followed by a black car, but conceded she could have been "persuaded" by Solt's description of the vehicle immediately after the accident.

5

The court preemptively ruled it would neither permit any evidence of contributory negligence nor the driving records of the victims or witnesses. After a discussion of the driving records of Page and Welch, the court stated, "The reason the Court ruled the way it did is because whether or not . . . Welch or . . . Page was a substantial factor in causing this accident isn't what's relevant. What's relevant was, was [defendant] a substantial factor in causing this accident." Nevertheless, the court reserved ruling on the admissibility of the driving records of Welch and Page.

The next day, defendant filed points and authorities seeking admissibility of the driving records of Welch and Page. The court permitted additional argument on the matter, but ultimately excluded admission of their driving records.

Only relevant evidence is admissible at trial, and trial courts have broad discretion to determine the relevance of proffered evidence. (*People v. Weaver* (2001) 26 Cal.4th 876, 933.) "Evidence Code section 352 accords the trial court broad discretion to exclude even relevant evidence 'if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' 'Evidence is substantially more prejudicial than probative [citation] if, broadly stated, it poses an intolerable "risk to the fairness of the proceedings or the reliability of the outcome" [citation].' [Citation.] We review a trial court's ruling under Evidence Code section 352 for an abuse of discretion. [Citations.]" (*People v. Clark* (2011) 52 Cal.4th 856, 893.)

6

"Evidence Code section 1103 authorizes the defense in a criminal case to offer evidence of *the victim's* character to prove his conduct at the time of the charged crime. Consequently, in a prosecution for a homicide or an assaultive crime where self-defense is raised, evidence of the violent character of the victim is admissible to show that the victim was the aggressor." (*People v. Shoemaker* (1982) 135 Cal.App.3d 442, 446, fns. omitted, italics added.) The defense of necessity is available to any defendant charged with gross vehicular manslaughter who acts in an emergency not substantially created by her to prevent significant bodily harm to herself or others. (CALCRIM Nos. 592, 3403; 1 Witkin, Cal. Crim. Law (4th ed. 2012) Defenses, §§ 62-65, pp. 500-505.)

First, Welch was not a charged victim of defendant's offenses; thus, Evidence Code section 1103 would not authorize the admission of evidence of his driving record to prove conduct in conformity therewith.[4] Second, to the extent Page's tailgating of defendant could be perceived as an emergency situation requiring defendant immediately

_____

[4] Contrary to defendant's claims at the initial oral argument in this matter, Evidence Code section 1103, subdivision (a)(1) is not construed broadly to include anyone who could be deemed to have been injured by a defendant's conduct. Rather, Evidence Code section 1103, subdivision (a) explicitly limits the admissibility of evidence of specific instances of conduct to "the victim of the crime for which the defendant is being prosecuted[.]" Although Welch could certainly be deemed a victim of defendant's actions, he was not a victim of any of the crimes for which defendant was being prosecuted. Moreover, defendant's citation to *People v. Tackett* (2006) 144 Cal.App.4th 445 actually belies her position on appeal. That court held Evidence Code section 1103, subdivision (a)(1) must be narrowly construed. (*Tackett*, at p. 455.) Moreover, it affirmed the trial court's exclusion of evidence of the defendant's passenger's prior acts of reckless driving while under the influence at the defendant's trial for felony driving under the influence where defendant alleged his passenger was the actual driver. (*Id*. at p. 448.) This, despite the fact that the defendant's passenger had been thrown from the truck, suffering substantial bodily injury, and could thereby be deemed a "victim" in a broad construction of the term. (*Id*. at p. 452.)

change lanes, we cannot say that it was not a condition substantially created by defendant's own behavior. After all, defendant had already twice cut-off Page such that Page was required to slam on his brakes and swerve to avoid a collision with defendant's vehicle.

Third, we cannot say that the tailgating of defendant's vehicle by Page, no matter how closely, was an emergency that required an illegal act in order to escape significant bodily injury. Defendant could just as easily have taken her foot off the accelerator, slowly braked, or simply waited for an opportunity to make a safe lane change as alternatives to colliding with Welch's vehicle. One cannot reasonably infer from Page's tailgating of defendant that he intended to strike her vehicle. Nor, even if that was his intent, can one infer it would necessarily have caused defendant substantial bodily injury, let alone injury even remotely comparable to that caused by defendant. The trial court acted well within its broad discretion in excluding evidence of the driving records of Page and Welch as irrelevant.

B.     <u>PROSECUTORIAL MISCONDUCT</u>

Defendant contends the prosecutor engaged in prejudicial prosecutorial misconduct by making purported allusions to the other drivers' ostensibly pristine driving records, in contradiction of his own knowledge of those records, when presenting his final summation. We disagree.

During trial, the People adduced the testimonies of four police officers who had each issued separate citations to defendant in the preceding three years. The offenses included three citations for speeding, including one for traveling at 80 miles per hour in a

8

55 mile per hour zone, and one for making illegal and unsafe lane changes. In the People's closing argument, the prosecutor referenced these citations, arguing defendant had been told a number of times about the dangers of driving recklessly.

The prosecutor then stated defendant "knew more than anyone else on the road not to drive like that." Defense counsel immediately requested a sidebar conference on the issue and admonishment of the prosecutor. The court cleared the courtroom of the jury and permitted defense counsel an opportunity to argue his objection to the People's statement. The court then informed the prosecutor, "The part about any other drivers, I believe he's correct. And I admonish you not to do that." Defense counsel asked that the jury be admonished that no evidence of any other drivers' records had been presented and the People's reference to such records was improper. The court concluded, "He's not going to make anymore reference to that. I'll leave it at that."

Misconduct by the prosecutor violates the federal Constitution when it "'''''comprises a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process."'''''" (*People v. Hill* (1998) 17 Cal.4th 800, 819.) "'Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves "'''the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury."''' [Citation.]' [Citation.]" (*Ibid.*) We review de novo a defendant's claim of prosecutorial misconduct. (*People v. Uribe* (2011) 199 Cal.App.4th 836, 860.) A prosecutor commits misconduct by arguing a proposition he knows is contradicted by

9

defense evidence excluded on the prosecution's own motion. (*People v. Varona* (1983) 143 Cal.App.3d 566, 570; *People v. Castain* (1981) 122 Cal.App.3d 138, 146.)

The prosecutor's single remark regarding other drivers, which would require the jury to engage in an inference unjustified by the record, was neither a pattern of egregious conduct nor reprehensible conduct rendering the trial fundamentally unfair such as to amount to prejudicial prosecutorial misconduct. The People's statement was fleeting and in no way prejudicial.

C.      SECTION 12022.7 ENHANCEMENTS

Defendant contends all three section 12022.7, subdivision (a) enhancements should be reversed because section 12022.7, subdivision (g) prohibits applicability of the statute to manslaughter cases. In our original opinion filed on March 19, 2013, we agreed that section 12022.7, subdivision (g) prohibits imposition of the enhancement relative to any victim in a case in which the defendant has been convicted for manslaughter as to that victim. Thus, we reversed the true findings on the section 12022.7, subdivision (a) enhancements with respect to victims Giambra and Page. However, we disagreed with defendant that section 12022.7, subdivision (g) prohibits imposition of the enhancement with respect to a victim who is not the subject of a defendant's manslaughter conviction. Thus, we affirmed imposition of judgment on the enhancement with respect to victim Valentine.

On April 2, 2013, the People filed a petition for rehearing relying, in large part, on our failure to consider the decision in *People v. Julian* (2011) 198 Cal.App.4th 1524

10

(Fourth Dist., Div. One) (*Julian*), in reaching our decision on this issue.[5]  On April 12, 2013, we granted the People's petition for rehearing and set the matter for supplemental briefing on the question of whether this court should follow the holding in *Julian*, which differed from that of our original opinion.  We have reviewed the supplemental briefs and *Julian* and stand by our original holding that section 12022.7, subdivision (g) prohibits imposition of the enhancement relative to any victim in a case in which the defendant has been convicted for manslaughter as to that victim.

Section 12022.7, subdivision (a) provides:  "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years."  However, section 12022.7, subdivision (g) prohibits applicability of the statute to "murder or manslaughter . . . .  Subdivisions (a), (b), (c), and (d) shall not apply if infliction of great bodily injury is an element of the offense."  Section 12022.7, subdivision (f) defines "great bodily injury" as "a significant or substantial physical injury."  "Statutory interpretation is a question of law that we review de novo.  [Citation.]" (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724.)

Defendant primarily exposits *People v. Beltran* (2000) 82 Cal.App.4th 693 in support of her contention.  In *Beltran*, the defendant fled the police, threw cocaine out the window, ran a stop sign, and collided with the victims' vehicle.  The driver of the other

---

[5] *Julian*, *supra*, was decided long before briefing began in our case, but was not cited by either party.  Nor, unfortunately, was it discovered by us in our own research.

car died and the passenger sustained injuries. A jury convicted the defendant of felony evasion and found true two section 12022.7, subdivision (a) enhancements that he had caused great bodily injury on the victims. The jury also convicted the defendant of vehicular manslaughter with respect to the driver. The trial court imposed sentence on both substantive counts and both enhancements. (*Beltran*, at p. 695.) The appellate court, relying exclusively on the language of section 12022.7, subdivision (g) that it does not apply to manslaughter, reversed the judgment to the extent it imposed the great bodily injury enhancements.

In *People v. Verlinde* (2002) 100 Cal.App.4th 1146 (Fourth Dist., Div. One) (*Verlinde*), the defendant rear-ended a flatbed truck in the emergency lane of the freeway, killing one of her own passengers and injuring the other two. (*Id.* at pp. 1155-1157.) The defendant was convicted of gross vehicular manslaughter while intoxicated; vehicular manslaughter without gross negligence; driving under the influence while causing injury to two victims; and driving with a blood alcohol content of over .08 and causing injury to two victims. The jury also found defendant personally inflicted great bodily injury on two victims within the meaning of section 12022.7, subdivision (a) on all counts. The trial court imposed sentence on the gross vehicular manslaughter count and imposed consecutive terms for the section 12022.7, subdivision (a) enhancements, but stayed imposition of sentence on the remaining counts and enhancements pursuant to section 654. (*Verlinde*, at p. 1154.)

On appeal, the defendant maintained the section 12022.7, subdivision (a) enhancements should be stricken for several reasons. The appellate court agreed that the

enhancement as to one of the victims should be reversed because the victim "was a potential accomplice of the charged crimes, and the trial court erred in not giving accomplice witness instructions. Moreover, the trial court, in instructing on the great bodily injury enhancement, failed to inform the jury that injury to an accomplice is not subject to enhanced punishment[.]" (*Verlinde*, *supra*, 100 Cal.App.4th at p. 1167.) However, as to the other victim, the court held, "The language of section 12022.7, subdivision (g) does not limit application of the statute to this vehicular manslaughter case where, in addition to the homicide victim, two other victims suffered great bodily injury." (*Id*. at p. 1168.) It reasoned that the statutory exemption operated to bar imposition of an enhancement for "the injuries inflicted on the homicide victim, who obviously has suffered great bodily injury." (*Ibid*.) Nonetheless, it would not limit imposition of the enhancement to other victims who were not the subject of the manslaughter conviction. Thus, it affirmed imposition of judgment on the enhancement as to the other victim. (*Id*. at pp. 1168-1169.)

In *People v. Weaver* (2007) 149 Cal.App.4th 1301 (Fourth Dist., Div. One) (*Weaver*), the defendant pled guilty to one count of gross vehicular manslaughter while intoxicated, and admitted an allegation she personally inflicted great bodily injury on another person in her commission of that offense. (*Id.* at p. 1307.) Defendant challenged imposition of judgment on the enhancement based on the language of section 12022.7, subdivision (g). The appellate court, relying partially on *Verlinde,* held that "a section 12022.7, subdivision (a) enhancement may apply to a victim-specific offense . . . even when the ostensible victim of that offense was not, for purposes of section 12022.7,

13

subdivision (a), the person on whom the defendant personally inflicted great bodily injury in the commission of that offense." (*Weaver*, at p. 1335.)  In other words, even though the gross vehicular manslaughter count was specific to the deceased victim, the court could properly impose judgment on a section 12022.7, subdivision (a) enhancement attached to that count if it involved another victim.  (*Weaver*, at p. 1335.)

The court determined, "There is no logical reason to preclude application of section 12022.7, subdivision (a) when a defendant personally inflicts great bodily injury on persons other than the victim of a 'victim-specific' offense, but to allow its application when those other persons were injured in the commission of a 'non-victim-specific' offense." (*Weaver*, *supra*, 149 Cal.App.4th at p. 1330.)  Further, it noted, "it is generally appropriate that a defendant be subject to greater punishment for committing an offense if his or her commission of that offense causes injuries to multiple persons.  [Citations.]  It is consistent with our criminal justice system to impose greater punishment on [the defendant] for the great bodily injuries she personally inflicted on [victim 2] during her commission of the section 191.5, subdivision (a) offense that caused [victim 1's] death." (*Id.* at p. 1331.)  The *Weaver* court criticized *People v. Beltran*, *supra*, for summarily concluding section 12022.7 enhancements could not apply to any vehicular manslaughter offenses regardless of injuries sustained by victims *other than the deceased*.  It characterized the *Beltran* decision as "without any substantive reasoning." (*Weaver*, at p. 1335, fn. 35.)

In *Julian*, *supra*, 198 Cal.App.4th 1524, a jury convicted the defendant of two counts of vehicular manslaughter against victims Terri Keller (count 1) and Amanda

14

Keller (count 2). The jury additionally found true great bodily injury enhancements under section 12022.7, subdivisions (a) and (b) attached to both manslaughter counts. As to count 1, the jury found true great bodily injury enhancements for causing the coma of Amanda,[6] and inflicting great bodily injury on Alexis Keller. On count 2, the jury found true attached great bodily injury enhancements as to Terri and Alexis. The trial court sentenced defendant to the "four-year upper term . . . for the manslaughter of Terri, a five-year enhancement for Amanda's great bodily injury . . . and a three-year enhancement for Alexis's great bodily injury. With respect to the manslaughter of Amanda, a four-year upper term and two three-year great bodily injury enhancements for the injuries to Terri and Alexis were imposed and stayed under section 654." (*Julian*, at p. 1526.) Defendant appealed contending the trial court erred in imposing all the section 12022.7 enhancements.[7] (*Julian*, at pp. 1526-1527.)

The court in *Julian* held, "Although Terri and Amanda died as a result of their injuries and their deaths support [the defendant's] manslaughter convictions, in this case their injuries also support enhancements under section 12022.7." (*Julian*, *supra*, 198 Cal.App.4th at p. 1530.) The court observed it was continuing to narrowly construe the exception set forth in section 12022.7, subdivision (g), as it had in *Verlinde* and *Weaver*, disallowing the enhancement only where it concerned the same victim of manslaughter or

---

[6] Amanda remained in a permanent vegetative state for six months and was thereafter removed from life support. (*Julian*, *supra*, 198 Cal.App.4th at p. 1528.)

[7] The jury in *Julian* convicted the defendant in Riverside Superior Court. The defendant appealed to this court. After the record was filed, the case was transferred from this court to Division One.

murder as the substantive count to which it was attached. (*Julian*, at pp. 1529-1530.) It reasoned such an "interpretation not only avoids the absurd result of diminishing punishment when a victim dies, it also is consistent with the requirement of section 654 a defendant be sentenced under the statute which provides the longest potential term of imprisonment." (*Id*. at pp. 1531-1532.) "To hold Alexis's injuries will support an enhancement but, because she died, Amanda's injuries will not, would permit a defendant . . . to benefit to some extent from the fact one of his multiple victims died rather than survived. We of course must reject such a grotesque interpretation of the statute" (*Id*. at pp. 1530-1531.) It further concluded a contrary interpretation was unnecessary to prevent double punishment because, as did the sentencing court in its case, application of section 654 would necessarily bar such a result. (*Id*. at pp. 1531-1532.)

We agree with *Verlinde*, *Weaver*, and *Julian* to the extent they allow imposition of a section 12022.7 enhancement with respect to a victim who is not the subject of a manslaughter conviction in that case. The statutory bar in section 12022.7, subdivision (g) would appear to be limited to the imposition of an enhancement with respect to a victim for whom the defendant had already been convicted of manslaughter. It would not apply to other victims for whom the defendant had not been convicted of manslaughter or murder. Likewise, imposition of the enhancement to victims who were not the subject of a manslaughter conviction is commensurate with the general notion of the propriety of imposing greater punishment for offenses that injure more than one individual. (*Weaver*, *supra*. at p. 1331.) Thus, the sentencing court correctly imposed judgment on the section 12022.7, subdivision (a) enhancement with respect to victim Valentine.

Although neither *Verlinde* nor *Weaver* explicitly barred nor indorsed imposition of a section 12022.7 enhancement with respect to a victim who was the subject of a defendant's manslaughter conviction, this was largely because neither court faced such a factual scenario.  Indeed, *Verlinde*, in dicta, reasoned that the statutory exemption operated to bar imposition of an enhancement for "the injuries inflicted on the homicide victim, who obviously has suffered great bodily injury."  (*Verlinde*, *supra*, 100 Cal.App.4th at p. 1168.)  Likewise, *Weaver* criticized *Beltran* for holding that the enhancement could not apply to victims *other than the deceased*.  (*Weaver*, *supra*, 149 Cal.App.4th at p. 1335, fn. 35.)  In our original opinion, we expressed the view that this dicta in *Verlinde* and *Weaver* supported our determination that imposition of a section 12022.7, subdivision (a) enhancement with respect to a victim for whom the defendant has already been convicted of manslaughter is barred by the express provision of section 12022.7, subdivision (g).  *Julian* informs us we were wrong to so interpret *Verlinde* and *Weaver*.  Nevertheless, we disagree with *Julian* and stand by our original holding.

First, although we do not construe section 12022.7, subdivision (g) as broadly as does *Beltran*, neither do we agree it should be construed as narrowly as does *Julian*.  Indeed, *Julian* largely renders section 12022.7, subdivision (g) as surplussage, relying on section 654 to bar dual punishment.  (*People v. Leiva* (2013) 56 Cal.4th 498, 506 ["'[W]henever possible, significance must be given to every word [in a statute] in pursuing the legislative purpose, and the court should avoid a construction that makes some words surplusage'"].)  Subdivision (g) would appear to mean what it clearly reads, i.e., the enhancement does not attach with regard to a victim of murder or manslaughter

17

for which a conviction on the substantive count has been obtained. Moreover, *Julian*'s holding results in a pleading shell game where a manslaughter charge as to victim A is enhanced with the great bodily injury of B, simultaneously charging the defendant with the manslaughter of B with an attached enhancement for A. The only function subdivision (g) then effectively serves is to prohibit a defendant from suffering a conviction for murder or manslaughter and an enhancement as to the victim of that same crime when she just happens to kill only one individual.

Indeed, under *Julian*'s logic, a broad construction of subdivision (g) might even allow a manslaughter conviction to be enhanced with an attached great bodily injury enhancement under section 12022.7, pertaining to the same victim, if that victim suffered some distinct injury. (*Julian*, *supra*, 198 Cal.App.4th at pp. 1530-1531 [the "separate and distinct nature" of Amanda Keller's injuries permits them to be used as an enhancement].) Thus, in *Julian*, if Amanda had been the only victim, *Julian*'s reasoning would have allowed both the manslaughter conviction for her eventual death and an attached enhancement for her coma. We would regard such a result as violative of the plain meaning of subdivision (g).

Second, *Julian*'s rationale that any other construction permits a defendant to benefit from wrongdoing does not necessarily withstand scrutiny. *Julian* reasons that to hold that a victim who does not die will support an enhancement, but a victim who does would permit a defendant "to benefit to some extent from the fact one of his multiple victims died rather than survived." (*Julian*, *supra*, 198 Cal.App.4th at p. 1531.) This is because the defendant in *Julian* was convicted of manslaughter for the death of Amanda

18

Keller, for whom he also sustained a subdivision (b) great bodily injury enhancement. The subdivision (b) enhancement with respect to Amanda, applicable for the infliction of great bodily injury, which causes the victim to become comatose or results in paralysis, mandated a five-year term, whereas the upper term for the substantive count of vehicular manslaughter allowed only a four-year term. Thus, imposing sentence on the enhancement attached to count 1 permitted the court to impose five years instead of four years on the count 2 manslaughter charge, for injuries sustained by Amanda.

However, in *Julian* the People could have merely pled the first count of manslaughter against Terri Keller with the section 12022.7 enhancements as to both Alexis Keller and Amanda Keller without charging a second count of manslaughter against Amanda and have obtained the same sentencing result. Indeed, in the instant case the People did not charge defendant for any substantive crime for the injuries sustained by Valentine. Rather, they merely attached the subdivision (a) enhancement to the count 1 charge. This most likely reflects the People's determination that any substantive crime they could have charged defendant with for injuries sustained by Valentine would have resulted in lesser punishment than simply alleging the enhancement for those injuries.

In the alternative, in *Julian*, the People could have pled the case exactly as they did, but moved for dismissal of the count 2 charge and attached enhancements pursuant to section 1385 at the time for sentencing; again, resulting in the same potential sentence for the defendant without violating the statutory language of subdivision (g). In the instant case, the subdivision (a) enhancements posed only a three-year term, while the

19

midterm posed four years and the upper term six years for the substantive counts.[8]

(§§ 12022.7, subd. (a), 193, subd. (c)(1).) Thus, in our case, as in most others, abiding by the proscriptions of subdivision (g) will not result in any benefit to defendant where incarceration is concerned in the immediate case. Regardless, any problem concerning the degree of punishment for the charge of vehicular manslaughter while intoxicated without gross negligence at issue in *Julian* being less than that for the section 12022.7, subdivision (b) enhancement is something that should be dealt with by the Legislature, not by judicial violation of the clear language of subdivision (g).

Third, subdivision (g) contains another provision which would bar imposition of the section 12022.7, subdivision (a) enhancements in this case as to Giambra and Page. Subdivision (g) also provides, "Subdivisions (a), (b), (c), and (d) shall not apply if infliction of great bodily injury is an element of the offense." Both the instant case and *Julian*, *supra*, involved convictions on the substantive counts for the homicides of victims for which the People additionally sought imposition of section 12022.7 enhancements. As *Verlinde* itself noted, "The statutory exemption for murder and manslaughter is

---

[8] At oral argument, after we granted rehearing in this matter, the People noted section 1170.1, subdivision (a) limits consecutive sentencing to one-third the middle term of imprisonment prescribed for each of the substantive offenses. Indeed, this is the precise sentencing scheme imposed by the trial court below. Since, as noted above, the sentencing court struck punishment on the section 12022.7, subdivision (a) enhancements as to Giambra and Page, our holding does not reduce the amount of time defendant will be imprisoned, it merely strikes *the findings* on those enhancements. The People have nowhere on appeal argued the sentencing court should or even could have imposed time on the enhancements. Indeed, *Julian* itself maintained section 654 would preclude double punishment where a defendant was convicted of a substantive offense and the enhancement with respect to the same victim. (*Julian*, *supra*, 198 Cal.App.4th at pp. 1531-1532.)

20

intended to bar imposition of an enhancement for the injuries inflicted on the homicide victim, who obviously has suffered great bodily injury." (*Verlinde*, *supra*, 100 Cal.App.4th at p. 1168; *People v. Valencia* (2000) 82 Cal.App.4th 139, 143-149 [statutory definition of "great bodily injury" includes death].) Thus, the section 12022.7 enhancements as to Giambra and Page cannot stand because defendant had already been found guilty for their deaths, a finding that inherently involves "great bodily injury."

Fourth, any argument that section 12022.7, subdivision (g) does not apply to stayed enhancements disregards both the clear language of the statute and the fact that even stayed enhancements may have unforeseen negative repercussions for a defendant. Again, subdivision (g) reads, "This section shall not apply to murder or manslaughter . . . . Subdivisions (a), (b), (c), and (d) shall not apply if infliction of great bodily injury is an element of the offense." It does not provide that it may apply if stayed. Moreover, stayed enhancements may be used to enhance a defendant's current sentence (Cal. Rules of Court, rule 4.421(a)(1)), inmate classifications (15 Cal. Code of Regs. §§ 3375, subds. (g)(5)(D) & (g)(6)(B), 3375.2, subd. (b)(26)), or punishment for future crimes (§ 667.5, subd. (c)(8)). Thus, however noble, the desire to punish a defendant more extensively for the perceived egregiousness of her crimes does not justify violating the statutory prohibitions on imposing section 12022.7 enhancements with regard to victims for which defendant has already been convicted of a homicide. Therefore, we shall reverse the true findings on the section 12022.7, subdivision (a) enhancements with respect to victims Giambra and Page.

21

D. PETITION FOR RELEASE OF JUROR INFORMATION

Defendant contends the trial court abused its discretion in denying her petition to disclose juror information. We disagree.

Code of Civil Procedure section 206, subdivision (g) provides: "Pursuant to [Code of Civil Procedure] Section 237, a defendant or defendant's counsel may, following the recording of a jury's verdict in a criminal proceeding, petition the court for access to personal juror identifying information within the court's records necessary for the defendant to communicate with jurors for the purpose of developing a motion for new trial or any other lawful purpose."

Upon the recording of a jury verdict in a criminal case, the court's record of the jurors' personal identifying information is to be sealed. (Code Civ. Proc., § 237, subd. (a)(2).) Any person may petition the court for disclosure of the identifying information, and the petition must be supported by a declaration establishing good cause for the disclosure. (Code Civ. Proc., § 237, subd. (b); *Townsel v. Superior* Court (1999) 20 Cal.4th 1084, 1098, fn. 7; *People v. Granish* (1996) 41 Cal.App.4th 1117, 1131.)

Good cause, in the context of a petition for disclosure to support a motion for a new trial based on juror misconduct, requires "a sufficient showing to support a reasonable belief that jury misconduct occurred . . . ." (*People v. Rhodes* (1989) 212 Cal.App.3d 541, 552; accord, *People v. Wilson* (1996) 43 Cal.App.4th 839, 850-852.) Good cause does not exist where the allegations of jury misconduct are speculative, conclusory, vague, or unsupported. (See *Wilson*, at p. 852.) We review the denial of a petition for disclosure for an abuse of discretion. (*People v. Jones* (1998) 17 Cal.4th 279,

22

317; accord *People v. Carrasco* (2008) 163 Cal.App.4th 978, 991; *People v. Santos* (2007) 147 Cal.App.4th 965, 978.)

Here, defense counsel contended he posited good cause for release of juror information, because he had been "informed by a juror that during deliberations one of the jurors went out and purchased toy cars to re-enact the accident during the lunch break prior to the juror's verdict. As part of that conversation, the jurors discussed what [defendant's] options were when tailgated by [Page] and discussed other options never presented by even the prosecution." The court denied defendant's petition reasoning, "the law says that you can't do experiments. But there is no difference with using plastic cars trying to—and looks like what they were trying to do was trying to find a way out not to convict her. But using plastic cars is not an experiment. That is no different than drawing little pictures or using the yellow [Post-it] that says this car's here, that car's there. I don't see good cause, sir."

"Not every jury experiment constitutes misconduct. Improper experiments are those that allow the jury to discover *new* evidence by delving into areas not examined during trial. The distinction between proper and improper jury conduct turns on this difference. The jury may weigh and evaluate the evidence it has received. It is entitled to scrutinize that evidence, subjecting it to careful consideration by testing all reasonable inferences. It may reexamine the evidence in a slightly different context as long as that evaluation is within the '"scope and purview of the evidence."' [Citation.] What the jury cannot do is conduct a new investigation going beyond the evidence admitted." (*People v. Collins* (2010) 49 Cal.4th 175, 249.)

Defendant's showing fell short of good cause for release of juror information. The use of toy cars to reenact the collision was not an investigation that went beyond the evidence presented at trial. Rather, it appears the jurors simply attempted to reenact the versions of the collisions as adduced in the evidence at trial. There was no showing the jurors attempted to discover new evidence by their experiment; it is difficult to imagine how they would have done so with such an experiment. Thus, the court acted within its discretion in denying defendant's petition.

## DISPOSITION

The true findings on the section 12022.7, subdivision (a) enhancements with respect to victims Giambra and Page are reversed. The superior court clerk is directed to generate a new minute order striking the enhancements. The clerk is further directed to forward a copy of the corrected minute order to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

CERTIFIED FOR PARTIAL PUBLICATION

MILLER
J.

We concur:

McKINSTER
Acting P. J.

CODRINGTON
J.

24